Christian, J.,
delivered the opinion of the court.
This is an appeal from the Circuit court of the City of *620 Eichmond. The following facts are disclosed by the-record:
^n the 13th day of August 1863, John Morgan purchased of Thomas Otey, trustee for Virginia H. Otey, a house and lot then situated in the county of Henrico, t)Ut now, and at the time when the bill was filed, in the-city of Eichmond, (the corporate limits of the city having-been extended since the said sale,) for the sum of $3,750.. Of this sum $2,000 was paid in cash, (in Confederate-treasury notes,) and for the balance two bonds were given of $875 each; one payable twelve months after date, and the other, two years after date ; and both bearing date August 13th, 1863. The first mentioned bond was paid at maturity. The second, which fell due on the 13th August 1865, is the subject of controversy in this suit, and is in these words: $875. Eichmond, Aug. 13th, 1863. Two years after date, I promise to pay to Thomas Otey, trustee for Virginia H. Otey, or order, the just and full sum of eight hundred and seventy-five dollars, value received, with interest thereon from the 13th day of August 1863, till paid ; for the true payment of which, I bind myself, my heirs, &c. As witness my hand and seal, this 13th day of August, 1863. John Morgan, [Seal], On the same day, to wit: on the 13th August 1863, a deed was executed by Thomas Otey, trustee for Virginia Otey, conveying the said house and lot to the purchaser, John Morgan ; who, thereupon, executed a deed of trust, by which he conveyed the same property to Wm. Fowlkes, trustee, to secure the payment of the balance of the purchase money.
In March 1868, the last bond due .August 13th, 1865, being still due and unpaid, the trustee was directed to execute the trust; and he accordingly advertised the property to be sold on the 20th March 1868. On the 13th of March 1868, a bill was filed by Mary Morgan (the said John Morgan having departed this life), his adm’x, to enjoin this sale. An injunction was awarded *621 by the Circuit court of the city of Richmond. This bill alleged that when the note fell due on the 18th August 1865, in the language of the bill, ** the said John Morgan 7 o o o tendered to the vendor the pro rata value of the said note reduced to Federal currency, according to the judgment .and rulings of the court of conciliation, then in operation in the city of Richmond ; which said tender and offer was refused and declined.” The bill further alleged, that “ the husband of the said Virginia Otey, when the first note fell due, expressed to the said John Morgan a desire to receive the amount of the second and last note now due aud unpaid, as he was about to purchase a farm ; that in consequence of such desire so expressed and made known, her husband raised the amount at some inconvenience, which he offered to the said John Otey; which he declined to receive, but stated that he, the said John Morgan, might hold the said sum of money, and he, the said John Otey, would call for it when he wanted it; that the said John Morgan did keep and hold said sum of money, and had and held it when Richmond was evacuated: and thus it was left on his hands an entire loss.” “Notwithstanding all which (the bill proceeds to allege), your oratrix is advised, believes aud so charges, that when the note fell due on the 13th day of August 1865, her said husband tendered to the said John Otey the value of the face of said note, reduced to Federal currency; which both he and the said Thomas Otey, trustee, refused to receive ; .asserting a demand for $875 in greenbacks; the payment of which was of course refused.”
To this bill (upon the filing of which an injunction was awarded, as before stated), John Otey and Virginia H. his wife, Thomas Otey, trustee of the said Virginia Otey, and William Folkes, the trustee in the deed of trust executed by John Morgan, are made parties defendants. The bill is answered by John Otey and wife, .and by Thomas Otey, trustee for Virginia H. Otey. *622 Both answers deny the material allegations in the bill.. The answer of John Otey and wife avers, “ it is not true’ as aTeged by, the plaintiff’s bill, that when the last bond fell due, the said John Morgan tendered to the vendor the value of the said note reduced to Federal currency, according to the rulings of the court of Conciliation, then in operation in the city of Richmond ; but the said John Morgan did tender to your respondent, John Otey, the amount of the said single bill in Confederate treasury notes, and insisted upon paying the said single bill in that currency; and your respondent, John Otey, then informed him that the said single bill could only be paid in such funds as were current at the time said single bill fell due, because such was the distinct understanding and agreement at the time the said property was sold ; and the said property would have been sold upon no other terms, as your respondent believed, at tbe time of said sale, that the Confederacy would not last even until the first single bill became due ; but the Confederacy being then in existence, and Confederate money being, still the principal if not the only currency in circulation, though very greatly depreciated ($875 in Confederate money being worth only $44 in gold), the payment of the first note was made and received without objection in Confederate money ; your respondent being willing to carry out in good faith the bargain in respect to the said sale of the real estate in the bill mentioned.” The respondents, Otey aud wife, deny the allegations of tbe plaintiff’s bill, that when the first bond became due, the said John Otey expressed a desire to receive the whole balance due, because he was desirous of purchasing a farm ; and that the said amount was tendered to him, and that he declined to receive it; but stated that the said Morgan might hold it, and the said Morgan in consequence lost the whole amount upon the termination of the late war. The respondents then solemnly aver that the understanding and agreement, at the lime of' *623 the sale, was, that the deferred payments should be made in such funds “ as may be current at the time the same should fall due.”
The answer of Thomas Otey, the trustee, adopts as his own the answer of his co-defendants ; and “ further answering says, that he never saw the said John Morgan but once, and that was when they were in the clerk’s office together for the purpose of having recorded the deed and deed of trust for the property sold to said Morgan ; and that neither the said Morgan, or anybody else for him, ever saw him or spoke to him .upon the subject of paying either of the single bills executed for said property.” He further avers in his answer, that ££ he knows that the understanding was that the notes for the deferred payments were to be paid in the funds which should be current when they became due ; and that the property would not have been sold on any other terms.”
If the case had stood alone upon the bill and answers, there could have been no doubt of the defendant’s right to a decree according to his version of the contract— that is, for whatever money might be current at the time of the maturity of the obligation. How was that right affected by the evidence ? The positive averment of both answers is to the same effect, “ that it was the understanding and agreement of the parties at the time of the sale of the property, that the deferred payments were to be made in the money which might be current at the time the same should fall due.” There is literally no evidence tending to contradict these statements in the two answers. But, on the contrary, both the evidence and the circumstances of the transaction sustain theaverments of the answers. And, indeed, there is nothing to support the allegation of the bill, that the contract was entered into with reference to Confederate currency, except the presumption growing out of the fact that the contract was entered into in the year 1863. This presumption is entirely overthrown by the circumstances of *624 the case, and the direct evidence, independent of the answers. The property was worth, according to the testimony of Wellington Goddin, a real estate agent of great experience, at least the sum of $1,200 in gold at the time of the sale'. It was sold for only $3,750, while $1,200 in gold was on the day of sale worth $14,000 in Confederate money. This fact, together with the further fact, that the long credit of two years was given for the last deferred payment, are very strong circumstances to support the position of the defendants. It is impossible to conclude, except upon the most explicit evidence, that any man of common discretion, especially a trustee holding property for a married woman, should sell it for $3,750 in Confederate currency, when it was worth upwards of $14,000 in that currency ; and it can only be explained by the assertion of the defendants, “that the deferred payments were to be made in the money that might be current at the time the same should fall due that they were willing to receive a part of the purchase money in Confederate currency, under the belief and expectation that by giving long credits for the deferred payments, they would be received in a sound currency, and that in this way the fair value of the land would be realized.
And this construction of the contract insisted upon by the defendants, is not only supported by the circumstances of the transaction, but by the positive testimony of the witnesses. Wellington Goddin, one of the witnesses examined by the defendants, says : “ Some time in the year 1863,1 was frequently consulted by Mr. John Otey in reference to selling for him certain real estate in or near the city, owned hy his wife. His instructions were to the effect, that I was to require a reasonable amount in cash, and the residue upon long credits ; .... he stating, that he was unwilling to receive the Confederate currency in full payment of the purchase money in cash ; but hoping by the time the *625 credit payments became due, he would get a better currency than Confederate currency then was.” Upon cross-examination, the same witness says further, “my ’ , , ... J interpretation of it, (that is his meaning) was, that he was to receive, when the obligations became due, such currency as the government under which we were then living was issuing. I do not remember that he mentioned what government he thought would be in existence here at the time alluded to; but I well remember, that he expressed great doubt whether the Confederacy would succeed or not.” I think it is clearly established, both by the answers (which are not contradicted by any testimony in the cause,) and by the facts and circumstances surrounding the whole transaction, that it was the intention of the parties, that the bonds for the deferred payments should be paid in the money current at the time they respectively matured.
I am of opinion, therefore, that the last bond of $875 having matured on the 13th of August 1865, must, in accordance with the principles settled by this court in the case of Kracker v. Shields, 20 Gratt. 377, be paid in the present currency. This is required by the terms of the contract, the justice of the case, and the presumed intention of the parties. I am, therefore, for affirming the decree of the court below.
Decree affirmed.